Good morning. May it please the court. Jonathan Libby appearing on behalf of appellant Xavier Alvarez. And I intend to reserve three minutes for rebuttal. Your honors, in some cases, false speech is protected speech. This is one of those cases. When Congress passed a law making it a crime to tell a non-defamatory lie about oneself, it violated the First Amendment of our Constitution. The government's position that lies are simply not speech for purposes of the non-defamatory speech clause is simply astonishing. People lie all the time, and I think all Americans believe that simply telling some of these lies are fully protected under the First Amendment. We tell lies to each other, sometimes to whoever will listen. We tell lies about personal facts about ourselves, about age, marital status, sexual orientation. These are all facts that people say all the time. Parents tell lies to their children, Santa Claus, the Easter Bunny. We try to make people feel better about themselves by lying. These are all non-defamatory lies which, according to the government, are not protected under the First Amendment. So you're taking the position that all non-defamatory lies are protected? I am, Your Honor. Okay. That's a stumbling statement. That would include statements under oath, as long as they're not defamatory? No, Your Honor. Obviously, we're not talking about perjury here. We're not talking about committing a fraud against the government or against another individual. What about the Nike case? The Nike case, of course, the Supreme Court ended up dismissing cert on that case, so it's not clear exactly where Nike fits, but that was a commercial speech case. The reality was the accusation was false, right? It was a false speech, and there was a claim of constitutional protection. The Supreme Court didn't buy that. Well, the Supreme Court didn't reach the issue because the Supreme Court dismissed cert. I understand there wasn't a dissent with respect to the cert. I believe Justice Breyer made some comments. Did he not? I don't know, Your Honor. Okay. Well, what about, we talk about fraud and economic issues. What about filing a fraudulent tax return? Well, again, Your Honor, if you're committing a fraud against the government or another person, then, yes, that... This gets down to a damage issue to some degree, an intent and a damage perhaps. In this case, the statute does not have an express intent requirement, does it? That's correct. Okay. Can it be imputed, since in this case, obviously, your client would have known that he was telling an untruth? Well, I believe in this case, it's clear my client did not know. That's true. He did not know that he had not received the congressional medal of honor. That's right. Well, he knew... No, certainly, I'm just spoken on it. He really... I'm spoken on it. He certainly was aware. But there certainly can be cases where individuals are not aware. Okay. But let's take this case. Sure. He clearly knew that what he was saying was false, right? That's true. Okay. I guess one of the issues here is, do you agree that the government has a legitimate interest to protect here? I certainly believe the government believes it has an interest. And do you believe it? Personally? Yeah. Sure. Okay. So how can the government protect that interest? That is the bona fides of a highly regarded medal that's given to very, very few people. If that's a legitimate interest, what's the alternative way that the government protects that? We're talking about, you know, First Amendment rights here. We're talking about strict scrutiny. As you know, one of the things we look at is, is this the best or the only way to protect that governmental interest? What could the government do to protect the integrity of that award other than the way that it's done? Well, they certainly don't need to criminalize it. They can perhaps impose civil liability. The fact that it's criminal that's the problem from your perspective, if they said, okay, we're going to impose a civil fine and we're going to publish in newspapers of general circulation throughout the country, this man is a liar, he said this, would that be okay? Perhaps. I mean, I don't think, the fact that someone's a liar, I think, I mean, one has the free speech right to say someone's a liar, certainly, and the government has that right as well. But I mean, that would in fact be the truth in this case, would it not? Correct. Okay. So I guess my point is, I'm looking for, I'm trying to get you to help me with how they can do it alternatively. If they've done it the best way they can, then I think that hurts your case. So I'm asking you to help me to understand, in what other way can the government protect what you concede is a legitimate interest in protecting the bona fides and integrity of this award? Well, of course, in this case, we're dealing with the Congressional Medal of Honor. Correct. There are only 94 living Medal of Honor recipients. Right. It is very easy for the government to publicize who these 94 individuals are. Now, there is a website, the Congressional Medal of Honor Society, cmohs.org. You can go on there. It lists every living recipient, every past recipient. It gives an explanation of what they did. So there are very easy ways that both the government and private individuals can demonstrate who, in fact, are the winners of the recipient. So the way the government protects its interest there is by simply making the information available so that anybody that's interested can check it out. Is that true? Absolutely, Your Honor. Okay. And there's nothing that the government can affirmatively do to protect it in any other way? Not without running afoul of the First Amendment. Okay. What First Amendment interest is represented by allowing this kind of speech? Well, falsehoods can have affirmative value as speech. False speech spurs the quest for truth. It sharpens our understanding of the differences between truth and falsity. Footnote 19 of the Sullivan decision cites to John Stuart Milne and John Milton and discusses how even a false statement may be deemed to make a valuable contribution to public debate since it brings about the clear perception and live- Of course, you're dealing, counsel, with a very, very high level of generality. That is, in general, a lie may serve some, may spur us to find out the truth. And that may be true, but you've already told me that not all defamatory lies are protected. For example, a person who is testifying under oath, someone who's engaging in fraud, someone who's filing their taxes. So what interest in what purpose would be served in your client's case by not sanctioning him for telling this kind of a lie? Because we live in a free society where people are free to speak their mind and even tell lies. In this case, the government has decided what lies it wants to prosecute and what lies it doesn't. But why isn't this akin to the fraud case? Why isn't this akin to fraud? It's kind of a political or public fraud. This guy's perpetuating a fraud on the public in a public forum in which it may be to his advantage to puff his credentials. Absolutely. And why can't the government protect our interest in those kinds of public fora? Because it's also possible in this society that people prefer that liars get elected to office. You know, we can't pick and choose which side we want to be on. But if we uphold this statute as being constitutional, doesn't that give the government or governmental activities? Well, yes, or about any individual, about anything you want to say about yourself. I mean, this statute makes it a crime for you and I in a private conversation for either of us to simply make this false declaration. So basically it's overbroad. That's your issue there, right? Well, it is completely overbroad, but it violates, I think, I mean, certainly the plain language of the First Amendment. And lies can be important. I mean, the various defamation cases that the court has considered certainly has much dictated about how lies don't help, except when they might. You know, lies... Well, like the Pentagon Papers. I mean, that obviously was a situation where there was a great public interest involved. Daniel Ellsberg's actions, which weren't lies, more of a disclosure issue, but a First Amendment point, ultimately brought out some very important public issues. But what do you have here? I mean, what public issue is involved? What is your client doing by claiming falsely that he was the recipient of a Congressional Medal of Honor? What public good, what public benefit is achieved by that that warrants this high level of congressional protection of the speech, or rather constitutional protection of the speech? Well, for that, all I can say is the First Amendment, especially when you read it in the context of all of our rights under the Constitution, protects individual autonomy. And sometimes the protection of individual autonomy requires that we accept the right to be inaccurate and even to lie. Okay. But Judge Bivey and I have given you several examples, and you know of lots more, of where you've even conceded that, you know, that's right to state falsehoods is not protected, even under the First Amendment. So we're really talking about cabineting this right that you're claiming in the context in which this arises. And I'm troubled by this open-ended concept that you have, that any attempt by the Congress to punish false speech in this regard, there's just no way it can pass constitutional muster. Well, Your Honor, obviously, and I certainly conceded that, yes, the government can prosecute when we're dealing with fraudulent activity. That's not what this statute is about. This statute has nothing to do with fraudulent activity. Mr. Alvarez was not accused of doing anything in this case other than making a false statement. Now, if the government wants to prosecute somebody who claims to have been in the But that's not what we have here. Here we're talking about plain speech, just in everyday conversation, making a false claim. And if the government can do it in this case, what says the government can't pass a law making it a crime to tell any type of lie? Just like political speech, I mean, we've all observed that sometimes politicians don't tell the truth. That's right. I know it's a shock. I know that's a shock to the members of the audience. Yes, cover your ears. That's right. That being the case, is that this man had already been elected. He was actually just being introduced, I gather. Is this a form of political speech? Well, I believe it is. To aggrandize his status as a public official? I believe it is a form of political speech. I mean, I don't think for purposes of our argument it needs to be political speech. The problem is here that this is speech that can affect any individual. But if you want to separate it out just as political speech, then yes, it is political speech, because he was speaking about his qualifications for the office he had recently been elected to, and presumably would be seeking reelection for. So certainly when a public official is making a statement about their qualifications, this absolutely is political speech. So should we be going down that road, that the politicians have a constitutional right to lie? Is that what we're saying? If the Court would find that easier to rule on my client's behalf, then absolutely. And with that, I'll reserve the balance of my time. Okay. Thank you. Mr. Libby. Good morning. May it please the Court, Craig Nisankian on behalf of the United States. I'd like to begin where counsel left off and say that the government has not taken a position, and certainly would not take a position, I personally would not take a position, that Congress could pass a law that would prevent someone from lying about their age, for example. Or lying about the existence of Santa Claus. We're not talking about criminalizing every possible lie. We are talking about a specific narrow area that ties directly back to a specifically enumerated power, in this case the War Powers Act, Article I, Section 8. In this particular case, though, it seems to me that most of the exceptions that we find in the case law suggest that there's a requirement of an intentional act, and that damages flow from that act. Would you agree with that? Like the filing of a false income tax return, for example. Not necessarily, Your Honor. Okay. What exceptions are we talking about here? Well, we're talking about quite a few exceptions. I should point out that Judge Kaczynski, in the U.S. versus Gowden case, identified over 100 federal statutes that criminalize false statements, perjury being one of the more obvious ones. But if we look at the Barnault case and the Leibovitz case, both of those cases specifically dealt with the issue of whether or not impersonating a federal employee, in order to criminalize that, there had to be the additional element of an intent to defraud somebody. And in the Barnault case and Leibovitz, they both held that intent to defraud was not necessary. What we're really asking when we ask that question is, does the right that's an individual cause of action, or can, in this case, we as a society pass a law to prevent harm to society more generally, and in particular the other, as counsel pointed out, 94 living recipients of the Medal of Honor? To get back to this statute, it seems to me that since this statute has no intent requirement and no requirement that damage be shown, how would this affect, for example, if a person accidentally misspoke or being sarcastic or spoke in the context of a fictional work? Why wouldn't those also be covered by the statute? I agree, Your Honor. If the court was to read the statute literally, those situations may be covered. The situation involving satire, for example, or hyperbole or dramatic representation. Right. Those three areas. And when we talk about overbreadth, we're talking about those three areas in particular. Right. And those would technically, on the face of the statute, if I say, yeah, right, I'm the holder of a Congressional Medal of Honor, technically I'd be violating the statute, right? Technically you would if you were to read it literally. And the government is not arguing for that. The government recognizes the court has carved out First Amendment protection for satire and hyperbole, and we could approach this question.  I'm sorry, Your Honor? Why don't those examples, like the satire or, you know, a fictional work situation, make this overbroad on its face? Your Honor, as Judge Nelson pointed out in Spars A Ponce about ten years ago, the overbreadth doctrine tries to go after substantial overbreadth. In this case, the areas of satire and hyperbole are not substantial areas that this statute is aimed at. I'm not aware of any single instance where the statute has been applied in that context. I'm not aware of any instance where someone has made a satirical statement or a hyperbolic statement about receiving the Medal of Honor where they did not intend that statement to be received by the listener as true. We all know from our history lessons about the Alien and Sedition Act in which the Congress penalized people for saying statements, whether true or false, but the Congress penalized people for saying statements against the government or any of its officers except the Vice President, interestingly enough, who was Thomas Jefferson. The why isn't this like in a sort of way the Alien and Sedition Act? Your Honor, I think the Gertz case said it best in distinguishing between demonstrable facts and ideas and opinions. In the Alien and Sedition Act, they said, you know, John Adams is the most awful president we've ever had. He's a pig. He's a royalist elitist. That would have been actionable under the Alien and Sedition Act. In this case, you're bringing into disrepute the highest award that can be given by the Congress and the United States government to somebody in time of war. It's a form of criticism of the government, I suppose. Why isn't this like that? Your Honor, that's a good point. If Mr. Alvarez had made critical comments about the Medal of Honor itself or about other recipients of that, we would not be standing here today. He did not do that. But by saying he had received it, he denigrated those who, in many cases, sacrificed their lives, were agents of the government who were serving and so on. If everybody marched in downtown, they all had fake congressional medals of honor, and pretty soon it multiplied to millions and millions and millions, it would denigrate the value of that award, would it not? That's true. That would be the outcome. But that was not his intent. By his false statement, he was not intending to communicate any idea about the Medal of Honor. But there's no intent requirement in the statute. It doesn't matter what he thinks. Well, Your Honor, the government would take the position that there is an intent. The intent is that the person made the statement intentionally and knowing it to be false. But the statute doesn't require it. It doesn't say knowingly, intentionally, with knowledge or anything like that. It just says if you state it. It doesn't use those words that's correct, Your Honor. It does refer to falsely represent, and I think it is a fair reading of the word represent to mean it was stated intentionally. So the government would have us construe the statute to impute an intention requirement. Is that correct? An intent to make a false statement. Yes. That's correct. Okay. Yes. But going back to the Court's example, we're not dealing with a false idea here. In the Supreme Court's view, there's no such thing as a false idea, and the government agrees with that. What we're dealing with here is a false demonstrable fact. In that regard, I think it's productive to compare this situation to the typical commercial speech situation where you have an advertiser making a false statement about their product, for example. As Justice Stewart said in his concurrence in the Virginia Pharmacy Board case, a seller of a product is presumed to know everything they know about their product. So you can punish a negligent false statement. You could actually make a false statement punishable on a strict liability standard because the person making the statement is presumed to know what they're talking about. That's exactly what we have here. We have Mr. Alvarez talking about himself, the product, if you will, and making a false statement about it. Presumably he knew it was false. It's admitted that he did. So we're not dealing with a situation where you have a false idea, a criticism about the government. And in that situation, it's very important to have what's been referred to as the breathing space for false ideas. We don't need that here. I ask your opposing counsel how the government could otherwise protect this award. What's the government's response to that? Other than this statute, what could it have done to protect the integrity of the award? Your Honor, I can't think of anything short of what counsel has referred to as the concept of more speech. So in other words, government says this man's a liar. You know, he said this and this. What about civil fines? What about the ---- That may be true, but the choice of remedy is really something that we typically defer to the Congress on. It would be no ---- if this statute ran afoul of the First Amendment, it would not be saved by the fact that the penalty was a civil versus a criminal penalty. Okay. So once we get past the issue of whether it passes constitutional muster, then it is really up to Congress to decide what the remedy should be. And whereas in this context ---- The statute wouldn't be saved by making it by merely re-designated as a civil statute rather than a criminal statute. That's correct. In this particular case, through chance, we're dealing with a public figure, somebody who is running for office. I mean, it's not like running for president where every misstatement is going to be scrutinized. But running for the local water district board, his statements could be conceivably scrutinized. And it could come out that the statement was false. That's not the situation we're dealing with in all applications of this statute. So ---- Do politicians have a constitutional right to lie? Gee, I hope not, Your Honor. I know there are certain ---- there is at least one case out of Washington that has suggested that, that even a negligent false statement or an intentional false statement is protected by the First Amendment. But so far as I'm aware, that's the only case that has recognized that. Well, let's say that we view this in the context that it arose. At least as I understand the facts, the man was elected to the water board. He goes to his first meeting as an official of that board. The chairman, I believe, said, would you like to say anything? Tell us about your situation. That's when he stood up and made this claim. Is that political speech? Your Honor, I don't know if it is political speech in the traditional sense. I would say for the purposes of this argument, we could consider it political speech because it was a statement by a politician about his qualifications for office. I realize he was being asked as a newly elected official of the board. He made a speech presumably to enhance his public stature. He didn't say it just because he liked the color of the award, I assume. He said it because he thought people would view him in an enhanced light. I think that's fair, Your Honor. But most of the cases that have dealt with political speech in particular have attempted to adopt the ---- have adopted the actual malice standard. In other words, they will create breathing room for political speech, and we can assume for the sake of argument that what Mr. Alvarez said was political speech. But they have not gone so far as to say intentional lies fall within that breathing space or need to fall within the breathing space. I understand the concept of breathing space, but the intentional lie, as most of the cases have said, helps us not one bit in our step towards the truth. But then you get back to the issue of the statute doesn't require that it be intentional. You've asked us to impute that. But so here you have a statute that just says if you say this, you're toast. Your Honor, I think there are two ways to deal with that issue. We could look at the existing language in the statute and read falsely represent to mean an intentional lie. We could deal with the over-breath issue in that way, that the words are there, they can be read properly in that context, or we could follow the over-breath cases and say is it reasonable and is it readily apparent from the language used to read that limitation into the statute. I think you can do it either way. I think it is a fair reading of the existing language to say it has to be an intentional lie. I think it's also fair to say that if the Court wanted to read that requirement in there, that it is both reasonable and readily apparent from the language that is being used. If there are no other questions, I'll submit on that. Thank you, Your Honor. Thank you, Mr. Mousakian. Mr. Libby, you've had some time reserved. Excuse me, Your Honor. Because this is a content-based restriction on speech, and in this case perhaps political speech, the government, of course, does bear the burden of establishing the constitutionality of this statute, including that this is, in fact, the least restrictive means. I don't believe that the government, in fact, has met its burden on this point. The discussion about commercial speech, commercial speech is obviously somewhat different. Courts in discussing commercial speech have suggested because consumers often make on-the-spot decisions about a product that the government, perhaps to protect them from, you know, not making a mistake, needs to regulate commercial speech a little bit more. That's very different from someone simply making a statement about a personal fact. And, of course, the government suggests it's not arguing for literal application of the statute. Well, that's fun and good for Mr. Mousakian to say that here we don't know that that's always going to be the case. We don't know how the government is going to prosecute this, or if Congress, if this statute is upheld, will act in terms of imposing additional statutes that make it a crime to tell a nondefamatory lie. In construing this congressional statute, do we have the right as a Federal court to impute intention into the statute, a requirement of intentional false statement? I'm not sure, Your Honor, to be honest with you. Isn't that the job of the Congress to write these things? It certainly is. And I think this Court can certainly say it should have such requirements. But if you take the government's construction of the term falsely represent, doesn't that account for the hyperbole? Doesn't that account for sarcasm? Doesn't that account for fictional works? I don't think so, Your Honor. I'm not sure how it, in fact, does do that. Well, if you and I were talking and you made some claim about yourself and I said, yeah, right, and just like I'm a Congressional Medal of Honor winner, I haven't really falsely represented something. In context, we understood that it was hyperbole, both by tone of voice and by the way in which I used the words, yeah, right, we would understand that. I think the government would have a pretty high burden to show that I had falsely represented myself as a Congressional Medal of Honor winner. Well, it's interesting. On page 19 of the excerpts, there's a newspaper article, it's part of the record, in which Mr. Alvarez is interviewed about a prior time he had made the same statement about being a Medal of Honor recipient. And he had given this long, detailed statement about how he had gone, he was trying to save the Iranian, the American Embassy in Iran, and he went back to get the flag and he was shot. And he explained that he told this story in order to brush someone off, that he tells Rambo-type stories in order to make people think he's from the psycho ward so that they'll leave him alone. But under this statute, he would be violating the statute, even though he's making it up just to brush someone off. Yeah, but it was a false representation that he intended for somebody to take seriously, whereas my conversation with you, yeah, right, I don't intend for you to go home and say, say, did you know that Jay Biden's a Congressional Medal of Honor winner? Well, he may have intended it to be taken seriously, but his intent was not that he believed he, in fact, was the recipient. Right. We don't have any evidence that he believed that he was a Congressional Medal of Honor recipient at the Water Board meeting either. True. True. I don't want to talk about that, though. Beg your pardon? Water Board. No. No. Unless the Court has any additional questions. I don't. I thank the Court. Mr. Libby and Mr. Mussockian, thank you very much for a very interesting argument. The alvarez is submitted, and we will go to the next case, which is the Rincon Ban v. Schwartzman. Mr. Schwarzenegger.
judges: Nelson T. G., Bybee, Smith M.